# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN KUEHNE, | |
| Plaintiff, | Case No. 1:15-cv-06525 |
| v. | Judge John Robert Blakey |
| ARLINGTON HEIGHTS PARK DISTRICT, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Defendant Arlington Heights Park District ("Defendant" or "Park District") employed Plaintiff John Kuehne ("Plaintiff" or "Kuehne") from July 21, 2008 to August 1, 2013. Plaintiff claims that his termination violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Family Medical Leave Act ("FMLA"), 42 U.S.C. § 2601 *et seq.* Defendant moved for summary judgment, and, for the following reasons, that motion [27] is granted.

**I.  Background**[1]

    **A.  Plaintiff's Employment**

Plaintiff was employed by Defendant from July 21, 2008 to August 1, 2013 as a General Trades Worker. [30] at 2. In that capacity, Plaintiff was responsible for

---

[1] These facts are taken from the parties' Local Rule 56.1 statements. [30] refers to Defendant's statement of facts. [31] contains Plaintiff's responses to Defendant's statement of facts and Plaintiff's additional facts as required by Local Rule 56.1. [35] refers to Defendant's response to Plaintiff's submission of additional facts. The Court disregards any allegations in the parties' statements that are not supported by cognizable evidence.

maintaining plumbing, heating and air conditioning units; swimming pool operations; and general electrical and carpentry work. *Id*. Plaintiff's most commonly performed job task was swimming pool maintenance. *Id*. Plaintiff admits that his "essential job duties" required him to, *inter alia*, "lift up to seventy-five pounds without assistance" and "climb and work on ladders." [31] at 9. At various times throughout the employment period, however, the Park District placed Plaintiff on "light duty," which did not involve lifting heavy objects or climbing ladders. *Id*.

### B. Defendant's Other Personnel

Alan Welk ("Welk"), Defendant's Superintendent of Parks, hired Plaintiff. [30] at 3. Throughout the employment period, Plaintiff reported directly to Welk. *Id*. Welk is responsible for managing the Park District's trades division. *Id*. Plaintiff was diagnosed with Type II Diabetes before he was hired, and Welk knew about Plaintiff's diagnosis at the time of his hiring. *Id*. at 6.

Nancy Aldrich ("Aldrich") is the Superintendent of Human Resources for the Park District. *Id*. at 4. Aldrich administers the Park District's human resources functions, crafting its leave policies and working to ensure its compliance with applicable employment laws and regulations, including the FMLA and ADA. *Id*. Aldrich learned about the Plaintiff's diabetes shortly after his hiring. *Id*. at 6.

Donna Wilson ("Wilson") is the Park District's Director of Finance and Personnel, and she oversees the Park District's human resources functions, policies and practices. *Id*. at 4.

## C. FMLA Leave

The Park District has an explicit "FMLA Policy" designed to protect employees' FMLA rights. *Id*. at 5. The FMLA Policy informs employees that "if [FMLA] leave was due to your own serious health condition, you will be required to submit a fitness-for-duty certification" from your health care provider. *Id*. Defendant uses the "rolling" method of calculating FMLA leave. *Id*. at 7. Under this approach, when the Park District establishes the first date of the requested leave, it then determines how much FMLA leave, if any, the requesting employee took in the twelve months immediately preceding the first date of the requested leave. *Id*. If the employee has already taken twelve weeks of FMLA leave within that period, the employee is not eligible to take additional FMLA leave at that time. *Id*. at 8.

Defendant contends that, during the course of Plaintiff's employment, he took FMLA leave on the following dates: July 7, 2009 to August 4, 2009; December 9, 2009 to December 12, 2009; June 1, 2010 to June 17, 2010; January 12, 2011 to January 29, 2011; April 23, 2011 to June 30, 2011; February 22, 2012 to May 31, 2012; October 10, 2012 to October 17, 2012; January 15, 2013 to February 6, 2013; and April 25, 2013 to June 26, 2013. *Id*. at 6. On June 27, 2013, Aldrich told Plaintiff that his FMLA leave was exhausted.[2]

---

[2] Plaintiff contends this assertion is "hearsay," [31] at 11, but this argument is misplaced. Defendant's assertion is supported by Aldrich's deposition testimony, which, on summary judgment, stands "in place of in-court testimony" and "may be considered so long as the facts set out therein are made on personal knowledge, would be admissible as testimony at trial, and show that the affiant is competent to testify." *Rahn v. Bd. of Trustees of N. Illinois Univ.*, No. 09-cv-3033, 2014 WL 11395248, at *2 (N.D. Ill. June 6, 2014), *aff'd*, 803 F.3d 285 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(c)).

3

Plaintiff does not dispute that he was on leave at those times, but denies that he was ever informed which leaves were counted against his FMLA entitlement. [31] at 8. Plaintiff additionally concedes that many of his leaves were caused by complications resulting from his diabetes, including the leaves he took from December 18, 2008 to January 5, 2009 (foot surgery), December 22 to 30, 2010 (same), April 23 to June 30, 2011 (two toes on his left foot were amputated), January 15, 2013 to February 6, 2013 (foot infection), and April 25, 2013 to June 26, 2013 (diabetic ulcer on his foot). *Id.* With the exception of the leave from April 25, 2013 to June 26, 2013, Plaintiff acknowledges that he did not suffer any retaliatory actions when he returned to work. *Id.* at 9.

### D. Plaintiff's Termination

Following his leave from April 15, 2013 to June 26, 2013, Plaintiff returned to work on June 27, 2013. [30] at 8. Plaintiff claims that by June 27, he was fully capable of performing his essential job functions. [31] at 13. Plaintiff's contention is supported by his own deposition testimony, his affidavit, and a note from his podiatrist, which provided, in its totality, that "Patient may return to work 6/26/13." *Id.*; *see also* [30-13] at 2.

When Plaintiff first reported to Welk on June 27, Welk observed that Plaintiff was limping. [31] at 12. Welk then directed Plaintiff to report to Aldrich regarding his work status and ability to perform the essential functions of his job. *Id.* At their June 27 meeting, Plaintiff presented Aldrich with his podiatrist's note. *Id.* Aldrich explained that she needed more information regarding Plaintiff's

4

condition, and provided Plaintiff with an additional form for his doctor to complete. *Id.* at 12-13. The parties agree that at the conclusion of the June 27 meeting, Plaintiff was placed on paid administrative leave. *Id.* at 14. Plaintiff's paid administrative leave was set to expire on July 6, 2013.[3] [30] at 9.

On July 2, 2013, Plaintiff's doctor completed the additional form supplied by Aldrich, and sent her the same. *Id.* This form indicated, *inter alia*, that Plaintiff was free to "return to work with no restrictions on 6/27/13." *Id.*; *see also* [30-14] at 1.

Aldrich and Welk remained concerned regarding Plaintiff's physical condition, and on July 3, 2013, Aldrich attempted to contact Plaintiff to schedule a functional capacity exam ("FCE"). [30] at 10. The FCE was designed to determine whether Plaintiff could perform his essential job functions. *Id.* On July 5, 2013 Aldrich left Plaintiff a voicemail explaining that she was concerned that Plaintiff could not safely do his job, and she had accordingly scheduled the FCE for July 8, 2013. [31] at 16. Plaintiff concedes that he listened to Aldrich's voicemail on July 5, 2013, but did not return her call. *Id.*

Plaintiff also admits that he cancelled the FCE without talking to anyone affiliated with the Park District. *Id.* at 17. Plaintiff further acknowledges that he did not return to work after the expiration of his administrative leave on July 6, 2013. *Id.*

---

[3] Plaintiff disputes Defendant's contention that his administrative leave was set to expire on July 6, 2013, but the evidence Plaintiff cites fails to support his position. [31] at 14.

5

After Plaintiff failed to report for either work or the FCE, Welk and Wilson both left Plaintiff voicemails, telling him he needed to return to work. [30] at 12. On July 12, 2013, Wilson wrote to Plaintiff, explaining that his "FMLA leave has come to an end." [30-16] at 2. Wilson also asked Plaintiff "why [he has] not returned to work, why [he] did not attend the fitness for duty examination . . . and why [he has] failed to return phone calls and messages left for [him] regarding [his] return to work." *Id.* Wilson further explained that if Plaintiff did not contact her by July 17, 2013, he would be terminated. *Id.*

On July 17, Plaintiff called Wilson, and they discussed his failure to report for the FCE or return to work. [31] at 18-19. Later that day, Wilson told Plaintiff to report back to work on July 18, 2013. *Id.* Plaintiff was unavailable on July 18, but he reported to work on July 19, 2013. *Id.* at 19. That same day, Welk told Plaintiff to return to work on July 22, 2013, to meet with Welk and Aldrich regarding his employment status. *Id.*

Plaintiff failed to report to work on July 22, with no explanation. *Id.* at 20. Aldrich eventually discovered, after talking to other Park District employees, that Plaintiff had been admitted to the Alexian Brothers Hospital in Elk Grove Village. *Id.* While in the hospital, Plaintiff and his doctors discussed the potential amputation of his left foot. [31] at 20-21. In fact, Plaintiff's doctors "strongly recommended" that Plaintiff proceed with an amputation, but Plaintiff refused. *Id.* at 21. On July 29, 2013, Plaintiff was discharged from the hospital. *Id.*

Aldrich and Plaintiff next spoke on July 31, 2013. *Id.* Plaintiff informed Aldrich that he had a blood infection and was not released to return to work. *Id.* The parties dispute whether Plaintiff also indicated that he would need to be off work for "several more weeks." *Id.* In either event, Plaintiff admits that he did not (and could not) provide a definitive date by which time he could return to work. *Id.* at 21-22.

On August 1, 2013, Aldrich, Welk, and Wilson conferred regarding Plaintiff's employment status. *Id.* at 22. They discussed Plaintiff's multiple unexcused absences and the fact that he had not provided a date by which time he intended to return to the Park District. *Id.* at 23. That same day, the decision was made to terminate Plaintiff, though the parties dispute which individual had final authority for the termination decision. *Id.* After the meeting, Aldrich left Plaintiff a voicemail informing him of the decision. *Id.* at 24. Welk wrote separately to Plaintiff, stating that: (1) Plaintiff was terminated because he was "unable to return to work" and needed "open-ended leave"; and (2) if Plaintiff was released to return to work, he could reapply for a position with the Park District. *Id.*; *see also* [30-17] at 2.

On August 29, 2013, Plaintiff received another release from his doctor, which indicated that he was free to perform "light duty work only." [30-18] at 2. Plaintiff admits this release was never provided to Defendant. [31] at 26.

On October 21, 2013, Plaintiff's left foot was amputated. *Id.* at 25. Plaintiff has not held a job since his termination, and has received social security disability

insurance payments since 2014. *Id.* at 27-28.

## II. Legal Standard

Summary judgment is appropriate if the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.,* 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *See CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014).

## III. Analysis

Essentially, Plaintiff has four separate theories of recovery: (1) interference under the FMLA; (2) retaliation under the FMLA; (3) disability discrimination under the ADA; and (4) failure-to-accommodate under the ADA.[4] The Court addresses Plaintiff's ADA claims first, for reasons that will become apparent.

---

[4] Plaintiff's Amended Complaint enumerates five separate counts: Count I ("Family and Medical Leave Act"); Count II ("Disability Discrimination"); Count III ("Disability Discrimination – Failure to Accommodate"); Count IV ("Americans With Disabilities Act: Record of Impairment"); and Count V ("Americans With Disabilities Act Regarded As Having An Impairment"). [18] at 5-15. Count IV and Count V do not reflect independent bases of liability; instead, they refer to different standards by which a plaintiff can be deemed "disabled" within the meaning of the ADA. *See* 42 U.S.C. § 12102(1) ("The term 'disability' means, with respect to an individual -- (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ."). Since being

8

A.  ADA Claims

Defendant argues that both of Plaintiff's ADA claims fail, insofar as he was not a "qualified individual" within the meaning of the statute. The Court agrees.

The ADA prohibits discrimination by an employer against a "qualified individual on the basis of disability." 42 U.S.C. § 12112(a). To determine whether Plaintiff was a "qualified individual," the Court must answer two questions: (1) Does Plaintiff satisfy the prerequisites for the position, such as possessing the proper educational background, employment experience, skills, or licenses?; and (2) Can Plaintiff perform the "essential functions" of the position, with or without a reasonable accommodation? *See Wheatley v. Factory Card & Party Outlet*, 826 F.3d 412, 417 (7th Cir. 2016). Only the second question is at issue here.

It is Plaintiff's burden to produce evidence sufficient to permit a jury to conclude that he would have been able to perform the essential functions of his job, with or without a reasonable accommodation. *Id.* at 418. More specifically, Plaintiff must "show that [he] could perform this essential function 'as of the time of the employment decision.'" *Moore-Fotso v. Bd. of Educ. of the City of Chicago*, No. 12-cv-10419, 2016 WL 5476235, at *9 (N.D. Ill. Sept. 29, 2016) (quoting *Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1003 (7th Cir. 1998)).

The "Seventh Circuit has 'repeatedly held that an employee who does not come to work cannot perform the essential functions of his job.'" *Moore-Fotso*, 2016

---

"disabled" is merely an element of Plaintiff's properly-plead discrimination and failure-to-accommodate claims, Count IV and Count V are redundant. Count I, meanwhile, alleges both that Defendant "interfered" with Plaintiff's FMLA rights and that Plaintiff's termination was "retaliation for his request for an FMLA leave of absence." [18] at 5. The Court accordingly construes Count I as articulating claims for both interference and retaliation in violation of the FMLA.

WL 5476235, at *8 (quoting *Fogle v. Ispat Inland, Inc.*, 32 F. App'x 155, 157 (7th Cir. 2002)); *Lee v. Chicago Transit Auth.*, No. 12-cv-09180, 2016 WL 6680483, at *4 (N.D. Ill. Nov. 14, 2016) ("It is well-established that an employee who is unable to work generally cannot perform the essential functions of the job, and thus an extended leave of absence is not a reasonable accommodation that an employer must provide so as to allow the employee to perform those functions."); *see also Robert v. Bd. of Cty. Comm'rs of Brown Cty., Kans.*, 691 F.3d 1211, 1218-19 (10th Cir. 2012) (At the time of plaintiff's termination, "the county did not have a reasonable estimate of when she would be able to resume all essential functions of her employment. As such, the only potential accommodation that would allow [plaintiff] to perform the essential functions of her position was an indefinite reprieve from those functions—an accommodation that is unreasonable as a matter of law. For that reason, she was not a qualified individual under the ADA.").

### 1. **Plaintiff Could Not Perform Essential Functions**

Defendant claims that Plaintiff could not, at the time of his termination, perform the "essential functions" of his job, as he was frequently absent from work and unable to provide a date for his return. Defendant further contends that Plaintiff was not a "qualified individual" insofar as: (1) he began receiving social security disability insurance benefits after his termination; (2) he refused to appear for the FCE; and (3) he has not worked in any capacity since his termination more than three years ago.

Defendant's argument comports with controlling precedent, as the ADA simply "does not protect individuals who fail to show up for work, even when their absences are a result of a disability." *Fogle*, 32 Fed. App'x at 157-58; *see also Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013) (Defendant is "permitted to treat regular attendance as an essential job requirement and need not accommodate erratic or unreliable attendance," such that a plaintiff "whose disability prevents her from coming to work regularly cannot perform the essential functions of her job, and thus cannot be a qualified individual for ADA purposes."); *E.E.O.C. v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 949 (7th Cir. 2001) ("Common sense dictates that regular attendance is usually an essential function in most every employment setting; if one is not present, he is usually unable to perform his job. This is especially true . . . where the work must be done on the employer's premises; maintenance and production functions cannot be performed if the employee is not at work.") (internal quotation omitted); *Waggoner v. Olin Corp.*, 169 F.3d 481, 484 (7th Cir. 1999) (In most cases "the ADA does not protect persons who have erratic, unexplained absences, even when those absences are a result of a disability. The fact is that in most cases, attendance at the job site is a basic requirement of most jobs.").

Plaintiff here has failed to demonstrate that, "as of the time of the employment decision," he "could perform the essential function" of regularly reporting to work. *Moore-Fotso*, 2016 WL 5476235, at *9. Before he was terminated on August 1, 2013, Plaintiff had: (1) failed to report to work (without explanation)

after the end of his administrative leave on July 6, 2013; (2) failed to attend (again, without explanation) the FCE, scheduled on July 8, 2013; and (3) failed to report to work (without explanation) on July 22, 2013. *See supra* at 6. By the time he was terminated on August 1, Plaintiff had provided the Park District with "no prescribed treatment, and no anticipated date by which [he] could have been expected to attend work regularly even if [he] had been granted leave." *Basden*, 714 F.3d at 1038. In fact, Plaintiff, at his deposition, could not identify *any* reason the Park District might have believed Plaintiff was capable of returning to work on August 1, 2013. *See* [30-2] at 19 (Q. "Did the Park District have any reason to believe that you would eventually be able to come back to work?"; A. "I don't know.").

### 2. Plaintiff's Evidence Is Insufficient

Plaintiff nevertheless contends that a reasonable jury could conclude that he was capable of performing his job's essential functions, in light of three discrete categories of evidence. The Court addresses each in turn.

Plaintiff first points to his own testimony regarding his ability to perform the essential functions of his job. This conclusory testimony, however, is "insufficient to meet [his] burden on summary judgment." *Wheatley v. Factory Card & Party Outlet*, 826 F.3d 412, 419 (7th Cir. 2016) (explaining that "a plaintiff does not necessarily need to produce expert testimony in order to demonstrate that she is a qualified individual," because the "need for such evidence will depend upon the facts

in each individual case," but a plaintiff's "conclusory and untested opinion/hope" is insufficient).

Plaintiff next relies upon the "work releases" issued by his podiatrist on July 26 and July 2, 2013. This reliance is misplaced. The relevant question is whether a reasonable jury could conclude that Plaintiff was capable of performing his job's essential functions "*as of the time of the employment decision*"; here, August 1, 2013. *Moore-Fotso*, 2016 WL 5476235, at *9 (emphasis added). After receiving the work releases on June 26 and July 2, Plaintiff: (1) never returned to work after the expiration of his administrative leave on July 6; (2) refused to take his FCE on July 8; (3) failed to report to work on July 22; and (4) failed to provide Aldrich a date for his return to work during their conversation on July 31. *See supra* at 6-7. In short, Plaintiff's work releases were issued *prior* to multiple unexplained absences, a week-long hospital stay, and Plaintiff's concession that he did not know when he could ever return to work. No reasonable juror could conclude that Plaintiff was capable of performing his essential functions on this record.[5]

Finally, Plaintiff invokes Defendant's "previous accommodations" to suggest that a reasonable jury could conclude that he was capable of performing the essential functions of his job. This argument misapprehends the "essential function" at issue here. Defendant is not suggesting that Plaintiff was not a "qualified individual" because he could not, for instance, climb ladders or lift heavy loads; instead, Defendant is arguing that Plaintiff was not a "qualified individual"

---

[5] Plaintiff's work release from August 29, 2013 is similarly irrelevant, as it postdates "the time of the employment decision." *Moore-Fotso*, 2016 WL 5476235, at *9.

13

because he could not perform the "essential function" of regularly showing up to work. As discussed *supra*, employers are entitled to treat regular attendance as an "essential function," and Defendant had ample reason to conclude that Plaintiff was incapable of regular attendance. Plaintiff had multiple unexplained absences in the summer of 2013, and when Plaintiff discussed his absences with Aldrich on July 31, he admitted that he could not provide a definitive return date. *See supra* at 6. Indeed, Plaintiff conceded at his deposition that the Park District had no reason to believe he would eventually be able to return to work. *See* [30-2] at 19 (Q. "Did the Park District have any reason to believe that you would eventually be able to come back to work?"; A. "I don't know."). To the extent Defendant's prior accommodations of Plaintiff's disability are relevant at all, they simply reflect normal compliance with the federal employment statutes.

In the end, Plaintiff's suit seeks essentially an open-ended, indefinite extension of his previous administrative leave, which Defendant was not obligated to provide. And since his termination, Plaintiff's foot was amputated, he has been unable to work, and he has been collecting social security disability insurance benefits. *See supra* at 6-7. No reasonable juror could conclude, on this record, that Plaintiff was capable of performing his job's essential functions at the time of his termination, and Defendant is accordingly entitled to summary judgment on Plaintiff's ADA claims.[6]

---

[6] Plaintiff also attempts to evade the foregoing result by suggesting that Defendant's "refusal to engage Plaintiff in the interactive process to discuss potential accommodations precludes its assertion that he was incapable of performing the essential functions of his position." [32] at 11. Plaintiff's argument puts the cart before the horse. To be sure, the ADA requires an employer of a

**B. FMLA Claims**

To survive summary judgment on his FMLA claims, Plaintiff was similarly obligated to demonstrate that he is capable of performing the "essential functions" of the job at issue. *See Franzen v. Ellis Corp.,* 543 F.3d 420, 426 (7th Cir. 2008) ("An employee also has no right to reinstatement—and, therefore, damages—if, at the end of his twelve-week [FMLA] period of leave, he is either unable or unwilling to perform the essential functions of his job."); *see also* 29 C.F.R. § 825.216(c) ("If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition or an injury or illness also covered by workers' compensation, the employee has no right to restoration to another position under the FMLA. The employer's obligations may, however, be governed by the Americans with Disabilities Act (ADA), as amended.").

The Seventh Circuit's decision in *James v. Hyatt Regency Chicago,* 707 F.3d 775 (7th Cir. 2013), is instructive here. The plaintiff in *James* premised his FMLA interference and retaliation claims on his employer's failure to reinstate him after

---

disabled employee to engage in an "interactive process"—a "flexible give-and-take with the disabled employee" designed to "determine what accommodation would enable the employee to continue working." *Swanson v. Vill. of Flossmoor,* 794 F.3d 820, 827 (7th Cir. 2015) (internal quotation omitted). That said, the "failure of the interactive process is not an independent basis for liability under the ADA." *Stern v. St. Anthony's Health Ctr.,* 788 F.3d 276, 292 (7th Cir. 2015) (internal quotation omitted). Indeed, even "if an employer fails to engage in the required process, that failure need not be considered if the employee fails to present evidence sufficient to reach the jury on the question of whether she was able to perform the essential functions of her job with an accommodation." *Id.* Phrased another way, "when no reasonable accommodation is possible the failure to jaw about accommodation is harmless." *Mays v. Principi,* 301 F.3d 866, 871 (7th Cir. 2002) *abrogated on other grounds by E.E.O.C. v. United Airlines, Inc.,* 693 F.3d 760 (7th Cir. 2012). Plaintiff has failed to present evidence from which a reasonable jury could conclude that, at the time of his termination, he was capable of performing his job's essential functions, and his "interactive process" argument is accordingly rejected.

he submitted a doctor's note releasing him to "light duty." *Id.* at 778. In affirming summary judgment for the defendant-employer, the Seventh Circuit reiterated that employers "are under no obligation to restore an employee to his or her position if the employee is unable to perform the essential functions of the job." *Id.*; *see also O'Haver v. Orthopaedic Assocs. of Wisconsin, S.C.*, No. 15-cv-240, 2015 WL 5714231, at *2 (E.D. Wis. Sept. 29, 2015), *appeal dismissed* (Jan. 12, 2016) ("Because O'Haver was not capable of performing the essential functions of her position when her FMLA leave ended, Orthopaedic Associates's alleged interference and retaliation did not result in damages to O'Haver and its termination of her employment was lawful under the FMLA.").

Here, Defendant's "failure to reinstate" Plaintiff, when he was "not yet cleared" to return to work, "cannot sustain a FMLA retaliation claim." *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 223 (7th Cir. 2015); *see also Harris v. Proviso Area for Exceptional Children*, 581 F. Supp. 2d 942, 960 (N.D. Ill. 2008) ("The FMLA does not protect a worker who needs a leave of indefinite duration from adverse action."); *Gibson v. Lafayette Manor, Inc.*, No. CIV.A. 05-1082, 2007 WL 951473, at *19 (W.D. Pa. Mar. 27, 2007) (An "employee, who is terminated after the expiration of FMLA leave because the employee is unable to perform the essential functions of the job at the time of termination, has failed to establish the requirement of an adverse employment action for a FMLA retaliation claim.").

The Court has already explained that by August 1, 2013, Plaintiff: (1) had been intermittently absent from work; (2) could not provide Defendant with a date

16

for his return to work; and (3) accordingly could not perform his job's "essential functions." *See supra* at 10-14. These determinations are fatal to Plaintiff's claims under the FMLA, as they were for his claims under the ADA.

## IV. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment [27] is granted. The Clerk is directed to enter Rule 58 judgment in favor of Defendant and against Plaintiff. Civil case terminated.

Date: April 18, 2017

Entered:

_____
John Robert Blakey
United States District Judge